UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| KIMBERLY A. URBAN, ) | |
| ) | |
| Plaintiff, ) | Case No. 2:13-cv-00055 |
| ) | Judge Sharp |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the Court are Plaintiff's *Motions for Judgment on the Administrative Record* (Docket Entry Nos. 23 and 24). The motion has been fully briefed by the parties.

Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for disability insurance under Title II and Supplemental Security Income ("SSI"), as provided by the Social Security Act ("the Act"). Upon review of the administrative record as a whole and consideration of the parties' filings, the Court finds that the Commissioner's determination that Plaintiff is not disabled under the Act is supported by substantial evidence in the record as required by 42 U.S.C. § 405(g). Plaintiff's motion will be denied.

## I. INTRODUCTION

Plaintiff, Kimberly A. Urban, filed applications for disability insurance benefits and SSI under Titles II and XVI of the Act on May 29, 2012, alleging an onset date of July 11, 2011. (Tr. 121-35). The Social Security Administration ("SSA") initially denied Plaintiff's applications on July

1

26, 2012. (Tr. 77-84). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 86-87). The hearing took place before the ALJ on March 22, 2013. (Tr. 32-56). On April 4, 2013, the ALJ denied Plaintiff's claims. (Tr. 17-28). On May 18, 2013, Plaintiff filed a request for a review of the ALJ's hearing decision. (Tr. 7-11). The Appeals Council denied Plaintiff's request for review on June 3, 2013, thereby making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6). This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. THE ALJ FINDINGS

The ALJ issued an unfavorable decision on April 4, 2013. (AR p. 17). Based upon the record, the ALJ made the following enumerated findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

2. The claimant has not engaged in substantial gainful activity since July 11, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: obesity; status-post calcaneal fracture with complex regional pain syndrom (CRPS); and an adjustment disorder with depressed mood (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except no more than two hours standing and/or walking in an eight-hour day; unskilled work only, with no production-like standards such as one might find on a conveyor belt or assembly line; and the claimant would have the option to sit or stand at her own discretion.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. Claimant was born November 13, 1978 which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 11, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(AR pp. 22-28).

### III. REVIEW OF THE RECORD

The following summary of the evidence of record is taken from Plaintiff's brief, Docket Entry No. 25 at pp. 2-4:

> Plaintiff was born on November 13, 1978, and was a younger individual on [her] AOD., [and] Plaintiff received a high school education. (Tr. 27). Plaintiff has past relevant work as a data entry clerk and a stock clerk. (Tr. 27). Plaintiff has not performed substantial gainful activity ("SGA") since July 11, 2011 and is insured for DIB through June 30, 2014. (Tr. 22).
>
> ***
>
> On July 11, 2011, Plaintiff presented to the [e]mergency room after fracturing her heel on a water slide. (Tr. 195). At that time, she complained of right ankle and foot

pain. (Tr. 190). Eventually diagnostic testing revealed a "fracture through the calcaneus body and posterior tubercle centers at least the posterior articular facet." (Tr. 198). Essentially – Plaintiff broke the heel of her foot. Unfortunately, Plaintiff's records show that her condition continued to produce excruciating pain for the Plaintiff. Nevertheless, Plaintiff returned to the office three months after the fracture occurred, on September 12, 2011, complaining that the pain in her heel was so great, she was unable to walk. (Tr. 229). The next day, Plaintiff called into the office "in tears." It was noted that Plaintiff said "she is in so much heel pain and there is so much swelling, she can[not] even put her sho[e] on." (Tr. 229).

As a result of Plaintiff's continued pain complaints, she underwent a right subtalar fusion in her right lower extremity. (Tr. 203). Following this procedure she continued to complain of on-going pain. (Tr. 225). First, Plaintiff tried physical therapy and medication. (Tr. 226). However, these measures were unsuccessful and she was prescribed a bone stimulator on January 16, 2012 in an attempt to relieve her pain and provide support and growth in her right ankle/foot/heel. (Tr. 225).

Although the fusion surgery was successful in fusing the bones, it did nothing to relieve Plaintiff's pain by adding more stability to her ankle and heel. In fact, Plaintiff complained of worsening pain following her fusion. Plaintiff called Dr. Kissel's office on February 1, 2012 asking for a brace to wear to help support her ankle because she was in severe pain with walking. (Tr. 224). During her February 13, 2012 office visit, Dr. Kissel wrote that "she is continuing to have pain at all times keeping her awake at night." (Tr. 224). Plaintiff began treatment at the pain clinic approximately [M]arch 1, 2012. (Tr. 224). She was given an epidural block on March 2, 2012 (Tr. 244). Further, on April 4, 2012, when Plaintiff still reported no pain relief, Dr. Perov[], her pain doctor, suggested that the hardware in her left foot [be removed]. (Tr. 224). Plaintiff underwent surgery to remove this hardware from her right foot on April 9, 2012. (Tr. 218-19). She was also noted to have RSD. (Tr. 218).

Plaintiff presented on May 2, 2012 for a re-evaluation with Dr. Kissel. (Tr. 217). During her visit, Plaintiff complained of continued pain. She was noted to have chronic RSD as a result of her lower extremity impairment. (*Id.*) At the suggestion of her treating providers, Plaintiff underwent a psychiatric evaluation with the hope of getting [a] spinal chord stimulator that would reduce the pain in her right lower extremity. (Tr. 215). This surgery was delayed somewhat, but [t]reatment notes on June 14, 2012 show that Plaintiff's trial stimulator helped greatly in the treatment of her pain. (Tr. 217).

In addition to the pain resulting from Plaintiff's multiple surgeries and treatments, Plaintiff has been diagnosed with Complex Regional Pain Syndrome (RSD). According to the Mayo Clinic's definition of Diseases and Conditions,

4

> "Complex regional pain syndrome is an uncommon form of chronic pain that usually affects an arm or leg. Complex regional pain syndrome typically develops after an injury, surgery, stroke or heart attack, but the pain is out of proportion to the severity of the initial injury, if any. The cause of complex regional pain syndrome isn't clearly understood."

Plaintiff's RSD pain is constant, but she also has flares of worsening pain with this condition. As her treatment notes show, during her April 18, 2012 [visit], she was noted to have a "significant flare of RSD." (Tr. 218). When her treatment was no[] longer successful in relieving enough pain, she was referred to a pain management doctor on April 11, 2012. (Tr. 218). Plaintiff also suffers with obesity. On October 23, 2011, Plaintiff was recorded with a body mass index (BMI) of 32, weighing 87 kg [190 pounds] and standing 5 feet, 5 inches tall. (Tr. 204).

## IV. DISCUSSION AND CONCLUSIONS OF LAW

**A. Standard of Review**

The determination of disability under the Act is an administrative decision. The only questions before this Court are: (i) whether the decision of the Commissioner is supported by substantial evidence; and (ii) whether the Commissioner made any legal errors in the process of reaching the decision. 42 U.S.C. § 405(g). *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (adopting and defining substantial evidence standard in context of Social Security cases); *Kyle v. Comm'r Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).

Substantial evidence has been defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The Commissioner's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial

evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)).

The Court must examine the entire record to determine if the Commissioner's findings are supported by substantial evidence. *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and final determination unless the record as a whole is without substantial evidence to support the ALJ's determination. 42 U.S.C. § 405(g). *See, e.g.*, *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

**B. Determining Disability at the Administrative Level**

The claimant has the ultimate burden of establishing her entitlement to benefits by proving her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The asserted impairment(s) must be demonstrated by medically acceptable clinical and laboratory diagnostic techniques. *See* 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(D); 20 C.F.R. §§ 404.1512(a), (c), 404.1513(d). "Substantial gainful activity" not only includes previous work performed by the claimant, but also, considering the claimant's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such

work exists in the immediate area in which the claimant lives, or whether a specific job vacancy exists, or whether the claimant would be hired if she applied. 42 U.S.C. § 423(d)(2)(A).

In the proceedings before the SSA, the Commissioner must employ a five-step, sequential evaluation process in considering the issue of the claimant's alleged disability. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001); *Abbot v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007); 20 C.F.R. §§ 404.1520(b), 416.920(b). Second, the claimant must show that she suffers from a severe impairment that meets the twelve month durational requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). *See also Edwards v. Comm'r of Soc. Sec.*, 113 F. App'x 83, 85 (6th Cir. 2004). Third, if the claimant has satisfied the first two steps, the claimant is presumed disabled without further inquiry, regardless of age, education or work experience, if the impairment at issue either appears on the regulatory list of impairments that are of sufficient severity as to prevent any gainful employment or equals a listed impairment. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§ 404.1520(d), 416.920(d). A claimant is not required to show the existence of a listed impairment in order to be found disabled, but such a showing results in an automatic finding of disability that ends the inquiry. *See Combs*, *supra*; *Blankenship v. Bowen*, 874 F.2d 1116, 1122 (6th Cir. 1989).

If the claimant's impairment does not render her presumptively disabled, the fourth step evaluates the claimant's residual functional capacity in relationship to her past relevant work. *Combs*, *supra*. "Residual functional capacity" ("RFC") is defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In determining a claimant's RFC, for

purposes of the analysis required at steps four and five, the ALJ is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Foster v. Bowen*, 853 F.2d 483, 490 (6th Cir. 1988). At the fourth step, the claimant has the burden of proving an inability to perform past relevant work or proving that a particular past job should not be considered relevant. *Cruse*, 502 F.3d at 539; *Jones*, 336 F.3d at 474. If the claimant cannot satisfy the burden at the fourth step, disability benefits must be denied because the claimant is not disabled. *Combs*, *supra*.

If a claimant is not presumed disabled but shows that past relevant work cannot be performed, the burden of production shifts at step five to the Commissioner to show that the claimant, in light of the claimant's RFC, age, education, and work experience, can perform other substantial gainful employment and that such employment exists in significant numbers in the national economy. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997)). *See also Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). In order to rebut a *prima facie* case, the Commissioner must come forward with proof of the existence of other jobs a claimant can perform. *Longworth*, 402 F.3d at 595. *See also Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 528 (6th Cir. 1981), *cert. denied*, 461 U.S. 957, 103 S. Ct. 2428, 77 L. Ed. 2d 1315 (1983) (upholding the validity of the medical-vocational guidelines grid as a means for the Commissioner of carrying his burden under appropriate circumstances). Even if the claimant's impairments prevent the claimant from doing past relevant work, if other work exists in significant numbers in the national economy that the claimant can perform, the claimant is not disabled. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). *See also Tyra v. Sec'y of Health & Human Servs.*, 896 F.2d 1024, 1028-29 (6th Cir.

1990); *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88-89 (6th Cir. 1985); *Mowery v. Heckler*, 771 F.2d 966, 969-70 (6th Cir. 1985).

If the question of disability can be resolved at any point in the five-step sequential evaluation process, the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4). *See also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (holding that resolution of a claim at step two of the evaluative process is appropriate in some circumstances).

**C. Plaintiff's Assertion of Error**

Plaintiff argues that the ALJ erred (1) by improperly evaluating Plaintiff's subjective complaints of pain; (2) by making an RFC finding that is unsupported by substantial evidence, and relying on the vocational expert's answer to his hypothetical question that incorporated his deficient RFC assessment; and (3) by failing to consider the effect of Plaintiff's obesity on her other impairments as required by SSR 02-1p. (Docket Entry No. 25 at pp. 6-16). Plaintiff contends that the Commissioner's decision should be reversed, or in the alternative, remanded for review. (*Id.* at 16).

Sentence four of 42 U.S.C. § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g). "In cases where there is an adequate record, the [Commissioner's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery*, 771 F.2d at 973. Additionally, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a

claimant's entitlement to benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (1994). Plaintiff's assertion of error is addressed below.

*1. The ALJ's Evaluation of Plaintiff's Subjective Complaints*

Plaintiff first argues that the ALJ erred in evaluating Plaintiff's subjective complaints. (Docket Entry No. 25 at pp. 6-9). Plaintiff's argument is as follows:

> [T]he ALJ failed to fully account for Plaintiff's subjective complaints of pain in accordance with SSR 96-7p and 20 C.F.R. § 404.1529(c)(3). Additionally, the ALJ failed to properly account for the extensive evidence supporting Plaintiff's subjective complaints of pain when making his credibility determination.
>
> ***
>
> In this case, Plaintiff's medical treatment notes document her on-going search for treatment to relieve her pain. Further, imaging reports provide objective medical evidence to support her severe allegations of pain.
>
> ***
>
> Plaintiff's medical evidence provides support for her subjective complaints of pain. Almost every treatment note[], if not every one, documents her complaints of severe and relentless pain. Furthermore, Plaintiff does not just experience post-surgical pain, but has also developed Complex Regional Pain Syndrome, which itself is a chronic and excruciatingly painful disorder. Plaintiff's attempts to seek various treatments also support a finding that she is credible.

(*Id.* at 7, 9).

The Commissioner contends, however, that the ALJ properly discounted Plaintiff's allegations of pain. (Docket Entry No. 31 at pp. 6-8). The ALJ found the following with respect to Plaintiff's alleged pain and credibility:

> The record indicates that while the claimant states her son helps her with everything, she still cooks, cleans, takes care of dogs, and independently maintains her personal hygiene. Moreover, the record indicates the claimant goes outside when needed; that

10

she can go out alone; and that she drives an automobile.

***

[T]he claimant clearly testified that her pain was at a constant 9/10 level from the time of the incident (July 2011) to June 2012 (placement of stimulator). However, pain clinic notes date[d] May 2012 reveal the claimant reported that her pain level was *usually* 5/10 and that only at its worst would it be 9/l0.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms: however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

***

[Pain Clinic notes] dated June 22, 2012 reveal[] the claimant's pain was at a 3-5 [out of] 10 and that such was acceptable to her. Interestingly, although advised to return in two weeks, the claimant did not return until November 16, 2012. . . Notes dated December 14, 2012 indicate she had her stimulator adjusted and reported that the discomfort was gone and that the stimulator was still providing the same good level of relief. Moreover, on follow-up dated December 28, 2012, the claimant again reported that the stimulator was "working very well for her." What's more, while the note indicates the claimant had recently slipped on the ice, she still had a *normal gait* and was able to stand and walk.

A view of Dr. Kissel's notes from the same time period reveals the claimant reported different symptoms altogether. For example, while the claimant indicated to her pain clinic doctor that the stimulator was working very well, Kissel['s] notes dated December 24, 2012 document complaints of significant pain, [and] notes dated the following month reveal[] reports that she was getting no relief from her stimulator.

For reasons alluded to throughout, the undersigned finds the claimant's testimony was partially credible, and accordingly, such has been given little weight. . . Overall, the undersigned finds the claimant does, in fact, have severe impairments and that she most likely does have chronic pain, as Pain Clinic notes and Kissel notes contain clinical evaluations. Nevertheless, the record clearly indicates the claimant was simultaneously reporting entirely different symptomology to separate medical providers.

***

> [A]ccording the claimant's testimony little weight is not to say her complaints of pain are not legitimate. To the contrary, the undersigned has provided significant accommodation for the claimant's chronic condition. However, to the extent she claims work-preclusive pain symptomology, such simply is not supported by the substantial evidence of record.

(AR at pp. 25-27 (internal citations omitted)).

The evaluation of Plaintiff's alleged symptoms rests with the ALJ, and "[a]s long as the ALJ cite[s] substantial, legitimate evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012). The ALJ found that the record reflects improvement in Plaintiff's symptoms with treatment, that Plaintiff's daily activities reflect that her pain was not as severe as alleged, that Plaintiff's hearing testimony was inconsistent with her May 2012 pain clinic treatment notes, and that Plaintiff's contemporaneous reports to different medical providers in the record were inconsistent. "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531-32 (internal citations omitted). The ALJ may also consider daily activities as one factor in the evaluation of subjective complaints. *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("Further, the ALJ did not give undue consideration to Temples' ability to perform day-to-day activities. Rather, the ALJ properly considered this ability as one factor in determining whether Temples' testimony was credible."); 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p.

Here, the ALJ's evaluation of Plaintiff's credibility is supported by substantial evidence in the record. Consequently, the ALJ's decision is conclusive and must be affirmed. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

*2. The ALJ's Assessment of Plaintiff's Residual Functional Capacity*

Plaintiff next argues that the ALJ's RFC assessment is unsupported by substantial evidence in the record as a whole. (Docket Entry No. 25 at pp. 10-14). Plaintiff also contends that, because the ALJ's RFC assessment was inadequate, the vocational expert's answer to the ALJ's hypothetical question incorporating his RFC assessment cannot constitute substantial evidence to support the ALJ's disability determination. (*Id.* at 14).

The residual functional capacity is the most an individual can still do despite the work related limitations that arise from his or her impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. However, the RFC need only include those limitations that the ALJ found credible. *See Justice v. Comm'r of Soc. Sec.*, 515 F. App'x 583, 588 (6th Cir. 2013). Moreover, the ALJ is not required to discuss all of the evidence submitted, and his or her failure to cite specific evidence does not indicate that is was not considered. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) (internal citation omitted)).

Here, the ALJ determined that Plaintiff retained the residual functional capacity to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b), except no more than two hours standing and/or walking in an eight-hour day; unskilled work only, with no production-like standards such as one might find on a conveyor belt or assembly line; and the claimant would have the option to sit or stand at her own discretion.

(AR at p. 24). Based on Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was unable to perform any past relevant work. (*Id.* at 27). However, the ALJ found that Plaintiff could perform other work existing in significant numbers in the national economy, including bench work assembly, inspector, and lobby attendant or gate guard. (*Id.* at 28).

In his analysis of Plaintiff's RFC, the ALJ considered Plaintiff's testimony, treatment notes,

13

and objective medical evidence documented by Plaintiff's medical providers. The ALJ noted treatment notes from Charles Kissel, a doctor of podiatric medicine, and from Plaintiff's visits to a pain clinic. Dr. Kissel's treatment notes and his February 2013 physical RFC questionnaire reflect that Plaintiff suffered from severe limitations. (*Id.* at 217-18, 224-30, 297-304). Pain clinic treatment notes from the same period reflect that, while Plaintiff suffered from chronic pain, her limitations were less severe. (*Id.* at 241-60; 282-96). The ALJ gave the pain clinic treatment notes greater weight because they contained regular physical exams and system reviews. (*Id.* at 26).

The ALJ properly considered Plaintiff's treatment notes and relevant opinion evidence, as well as her hearing testimony. Thus, the Court finds that the ALJ's evaluation of Plaintiff's RFC is supported by substantial evidence in the record as a whole. Accordingly, the Court also finds that the hypothetical question incorporating Plaintiff's RFC that the ALJ posed to the vocational expert at Plaintiff's hearing adequately described Plaintiff's limitations, and the vocational expert's subsequent testimony constitutes substantial evidence on which the ALJ properly relied in determining that Plaintiff is not disabled.

*3. The ALJ's Consideration of Plaintiff's Obesity*

Finally, Plaintiff argues that the ALJ erred in failing to consider Plaintiff's obesity as required by SSR 02-1p. (Docket Entry No. 25 at pp. 14-16). However, the ALJ listed obesity as one of Plaintiff's severe impairments and specifically found the following:

> It has been suggested in the medical record that the claimant is obese. The medical record indicates that the claimant weighs 200 pounds, and has a height of 65". This would give her a BMI of approximately 33. Body Mass Index (BMI) is a measure of an individual's obesity. Indexes over 29 are considered to be in the obese range. An individual may have limitations in any of the exertional functions, postural functions, in her ability to manipulate objects, or to tolerate extreme heat, humidity, or hazards because of obesity. "[T]he combined effects of obesity with other impairments can

be greater than the effects of each of the impairments considered separately" (SSR 02-0lp). The effects of the claimant's obesity have been considered when determining a residual functional capacity for the claimant.

(AR at pp. 22-23).

Social Security Regulation 02-1p describes how to consider a claimant's obesity in determining eligibility for Social Security benefits. Yet, "Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411-12 (6th Cir. 2006). Here, the ALJ accounted for Plaintiff's obesity in the RFC by restricting Plaintiff to two hours of standing and/or walking in an eight-hour day and allowing her the option to sit or stand at her own discretion. (AR at p. 24). Thus, the ALJ did not err in his consideration of Plaintiff's obesity.

## V. CONCLUSION

In sum, the Court concludes that the findings of the ALJ are supported by substantial evidence on the record as a whole, and are free from legal error. With such support, the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *E.g.*, *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005).

For all of the reasons stated, the Court will deny Plaintiff's *Motions for Judgment on the Administrative Record* (Docket Entry Nos. 23 and 24).

An appropriate Order shall be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE